***********
Upon review of the competent evidence of record with reference to the errors assigned, and finding no good grounds to receive further evidence or to rehear the parties or their representatives, the Full Commission, upon reconsideration of the evidence, modifies the Opinion and Award of Deputy Commissioner Holmes and enters the following Opinion and Award.
 ***********
The Full Commission finds as a fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS *Page 2 
1. The date of the admittedly compensable injury that is the subject of this claim is August 23, 2006.
2. At all relevant times, the parties hereto were subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
3. At all relevant times, Defendant-Employer regularly employed three (3) or more employees in the State of North Carolina.
4. At all relevant times, the administrator of workers' compensation for the Defendant-Employer has been Corvel Corporation or previously Key Risk Management.
5. Plaintiff's pre-injury average weekly wage is $401.33, resulting in a compensation rate of $267.55 for purposes of her total disability.
6. The North Carolina Industrial Commission has jurisdiction over the subject matter and the parties involved in this case.
7. Through no fault of her own, Plaintiff was overpaid $46,828.54 in indemnity compensation by Defendant before May 2, 2010. This overpayment and its repayment plan are handled through the parties' Consent Order, which the Commission approved on May 18, 2010. Through the present time, the Social Security Administration has not increased its payments of disability insurance benefits to Plaintiff to satisfy any of this overpayment.
 *********** ISSUES TO BE DETERMINED
1. Whether Plaintiff and her family members are entitled to attendant care compensation from August 23, 2006, through the present time and continuing?
2. Whether Plaintiff is entitled to the assistive aids contained in the life care plan prepared by Laura Weiss? *Page 3 
3. Whether the triggering of Plaintiff's fingers is causally related to her compensable injury of August 23, 2006?
 ***********
Based upon all of the competent, credible evidence of record and the reasonable inferences flowing therefrom, the Full Commission makes the following additional:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, Plaintiff was 60 years old and had worked as an elementary school reading assistant with Defendant for almost 30 years. She also worked in the school office and library as a part of her job.
2. Plaintiff contracted polio at the age of two. She was in an iron lung for approximately five years. After numerous reconstructive surgeries, she returned home at the age of seven to live on the family farm. However, the polio and its consequences rendered Plaintiff's right arm flaccid and paralyzed. She has had no use of it since childhood.
3. Despite her right-arm paralysis, Plaintiff worked for Defendant for almost 30 years. She was also able to drive, get groceries, and perform all activities of daily living, with the sole exception of washing and styling her hair.
4. On August 23, 2006, Plaintiff injured her left hand and thumb in a work-related accident. Defendant accepted her claim as compensable through a Form 60 and sent her to several doctors, including Dr. Christopher Lechner, an orthopedic surgeon.
5. Dr. Lechner diagnosed Plaintiff with a work-related ulnar collateral ligament avulsion fracture with gross instability at the metacarpophalangeal (MP) joint. On January 9, 2007, Dr. Lechner performed an arthrodesis of the MP joint of Plaintiff's thumb with implantation of hardware. He released her on May 31, 2007, and anticipated no permanent work *Page 4 
restrictions. Plaintiff experienced problems upon returning to work, however, and on June 14, 2007 Dr. Lechner reinstated restrictions of lifting no more than one pound with the left upper extremity and no use of heavy or vibrating tools. Dr. Lechner indicated that these restrictions were permanent as of August 23, 2007.
6. On October 15, 2007, Plaintiff saw Dr. William Lowe for problems associated with trigger fingers and ongoing pain in her left hand. Dr. Lowe recommended an A1 pulley release procedure to address the trigger fingers and removal of the hardware placed by Dr. Lechner during the first surgery. Dr. Lowe also recommended a CMC arthroplasty as a component of the proposed surgery.
7. Plaintiff's trigger fingers are not a direct consequence of her compensable accident on August 23, 2006.
8. On June 6, 2008, Dr. Lowe performed the surgery that he had recommended. The cost of the procedures relating to Plaintiff's trigger fingers were billed to Plaintiff's group health insurance coverage, and the remaining procedures in the surgery were billed to workers' compensation and Defendant.
9. A post-operative MRI revealed a possible tear to the TFC ligament. On November 7, 2008, Dr. Lowe performed an arthroscopic debridement to repair the tear.
10. On August 10 and 11, 2009, Plaintiff underwent a functional capacity evaluation (FCE) that showed a full and consistent effort on testing. According to the results of the FCE, Plaintiff has permanent restrictions of lifting no more than five pounds with her left upper extremity due to her work-related injury.
11. Since her injury, Plaintiff's left hand becomes fatigued more easily, and she drops objects and has to rest her hand more. *Page 5 
12. Although Defendant initiated vocational rehabilitation services, Defendant discontinued the services after only a few appointments. Plaintiff went out on disability retirement with Defendant in March 2010. She also receives Social Security disability from the federal government and long-term disability through the State of North Carolina.
13. Plaintiff's injury of August 23, 2006, and its consequences have significantly impacted her ability to perform activities of daily living. Because of her considerable limitations in her injured left hand and a non-functional right upper extremity, Plaintiff's abilities to dress herself, groom herself, bathe herself, transfer from the floor, drive more than minimal distances, perform housework, do the laundry, and prepare meals and cook are significantly impaired. She has problems reaching, lifting, gripping and grasping due to her injury. Stooping, squatting, and kneeling are dangerous because Plaintiff cannot get up from the floor without the help of her upper extremities, and she has actually fallen on multiple occasions and sustained injury while trying to bend over and pick items up off the floor. Plaintiff has had poor balance since her injury due to the limitations with her upper extremities. She cannot climb ladders, and climbing stairs is difficult due to the risk of falls and her inability to grip handrails. Plaintiff used to serve as an usher in her church, but she gave up the activity after her injury because she could no longer carry the offering plates. Plaintiff's therapists and doctors have noted her inability or significantly impaired ability to perform activities of daily living due to her compensable injury.
14. Plaintiff's family members have had to attend to and assist Plaintiff in performing some of her activities of daily living due to the consequences of her injury. These family members include (1) her husband, (2) her three sisters, two of whom live next door to Plaintiff and another who has been a registered nurse for over 40 years and who lives nearby, and (3) her *Page 6 
grandson, who stays with Plaintiff. Plaintiff's grandson has had to sacrifice his participation in some school activities due to Plaintiff's limitations or medical needs.
15. Laura Weiss is a stipulated expert in the field of life care planning and registered nursing. She is a certified life care planner. Certified life care planners are specifically trained to assess the need for attendant care services and normally make that assessment as part of the preparation of a life care plan.
16. Ms. Weiss prepared a life care plan for Plaintiff's medical needs. These needs include attendant care services and adaptive equipment or aids that would improve her independence and quality of life. With the exception of Dr. Lowe, who felt that these issues were not within his expertise as an orthopedic surgeon, Plaintiff's doctors and therapists agree on the medical needs set forth in Ms. Weiss' life care plan for Plaintiff.
17. The preponderance of the evidence shows that recommendations made for Plaintiff by Ms. Weiss in her life care plan are medically necessary.
18. The preponderance of the evidence shows that, as a result of her compensable injury, Plaintiff needs a total of 12 hours a day of attendant care services, consisting of 4 hours of CNA care and 8 hours of companion or supervisory care.
19. There is insufficient evidence or documentation to determine how much attendant care has been provided by Plaintiff's family and friends prior to the hearing of this matter by the Deputy Commissioner.
20. In the market in which Plaintiff lives, attendant care services are paid at a rate of between $15.00 and $17.00 per hour for normal hours and up to $22.50 or $25.50 per hour if they are working overtime. Based upon the preponderance of the evidence, in view of the entire *Page 7 
record, the Full Commission finds that $15.00 per hour is a reasonable rate to compensate attendant care providers for such services.
21. Plaintiff's family members are more than adequate care providers for Plaintiff, given the continuity of their care and their personal investment in taking care of a family member. Plaintiff also feels more comfortable with her family members providing the care than someone outside of her family.
22. The preponderance of the evidence shows that Plaintiff would benefit from adaptive equipment to improve her independence and quality of life. This equipment includes, but is not necessarily limited to, a shower chair, a handheld shower attachment, an attachable basket for bathing items, a lightweight handheld shower hose with soft-grip handle and safety strap, a Toiletvator toilet seat, an extra long safety bath mat, a foot brush with suction cup, an ergonomic long-handled sponge with a strap, a suctioned fingernail brush, a toothpaste dispenser, a body creamer, a functional hand grip, a universal holder, a zipper pull, a clamp-on vegetable peeler, a jug tipper, a one-handed paring board, a ring-pull can opener, a single-hand can opener, a rocker knife, a rolling clothes basket, a lightweight vacuum cleaner, and doorknob extensions for her house. Defendant has already provided many, but not all, of these items to Plaintiff. According to the estimates in Ms. Weiss's life care plan, the total cost for this equipment and replacements — including the ones that Defendant has already provided — is less than $191.00 per year over the course of Plaintiff's life expectancy.
23. Plaintiff's correct pre-injury average weekly wage is $401.33. However, Defendant has paid her at incorrect amounts based on their miscalculation of Plaintiff's average weekly wage for extended periods. *Page 8 
24. Due to no fault of her own and to Defendant's miscalculation of the rate at which her compensation should have been paid early in her claim, Defendant overpaid compensation to Plaintiff by $46,828.54 before correcting her compensation rate to $267.55. Pursuant to the parties' Consent Agreement, which was approved by former Executive Secretary Tracey Weaver on May 18, 2010, Plaintiff agreed to reimburse Defendant for the aforementioned overpayment from the net proceeds of, "(1) any retroactive increases in Social Security disability due to the recalculation of the offset under 42 U.S.C. § 424a and her correct workers' compensation rate of $267.55 and/or (2) attendant care compensation awarded (if any) to members of Plaintiff's household, with their consent, after the current litigation on the issue of attendant care resolves."
 ***********
Based on the foregoing stipulations and findings of fact, the Full Commission enters the following:
 CONCLUSIONS OF LAW
1. The Industrial Commission has jurisdiction over the parties and the subject matter of this litigation. N.C. Gen. Stat. § 97-91.
2. Plaintiff sustained a compensable injury by accident to her left hand on August 23, 2006. N.C. Gen. Stat. § 97-2(6). However, Plaintiff's trigger fingers are not a likely consequence of this injury. Holley v. ACTS, Inc.,357 N.C. 228, 581 S.E.2d 750 (2003).
3. Plaintiff has been and continues to be totally disabled as a result of her compensable injury. N.C. Gen. Stat. §§ 97-2(9), 97-29.
4. Plaintiff's pre-injury average weekly wage and compensation rate have been stipulated by the parties at $401.33 and $267.55, respectively. N.C. Gen. Stat. § 97-2(5). Pursuant to the terms of the parties' Consent Order approved by the Commission May 18, 2010, *Page 9 
Defendant is entitled to reimbursement for the $46,828.54 in overpaid compensation from the net proceeds of, "(1) any retroactive increases in Social Security disability due to the recalculation of the offset under 42 U.S.C. § 424a and her correct workers' compensation rate of $267.55 and/or (2) attendant care compensation awarded (if any) to members of Plaintiff's household, with their consent, after the current litigation on the issue of attendant care resolves."
5. Plaintiff is entitled to attendant care services due to her compensable injury. N.C. Gen. Stat. §§ 97-2(19), 97-25; Ruiz v.Belk Masonry Co., 148 N.C. App. 675, 559 S.E.2d 249 (2002);London v. Snak-Time Catering,136 N.C. App. 473, 525 S.E.2d 203 (2000). Although there is some evidence that her friends and family provided attendant care before a life care plan was produced, it is impossible for the Full Commission to determine who actually provided the care and how much time was spent for the benefit of Plaintiff. There is also insufficient evidence of record to determine at what date the attendant care became necessary prior to the completion of the life care plan.
6. The assistive devices and aids identified by Ms. Weiss for Plaintiff's benefit are medically necessary and reasonably related to her compensable injury. N.C. Gen. Stat. § 97-25.
 ***********
The foregoing stipulations, findings of fact, and conclusions of law engender the following:
 AWARD
1. Defendant shall continue to pay temporary total disability compensation to Plaintiff in the amount of $267.55 per week and continuing subject to the attorney's fees set forth below. *Page 10 
2. Defendant shall pay attendant care compensation in the amount of $15.00 per hour for twelve (12) hours per day, seven (7) days per week from the date of the filing of this order subject to the attorney's fees set forth below. The Plaintiff shall designate which family members shall be named to provide said attendant care and to provide Defendant with the necessary information so that they may be properly paid by Defendant.
3. Defendant is entitled to reimbursement of $46,828.54 for the overpayment of disability compensation to Plaintiff in accordance with the terms of the parties' Consent Order approved by the Commission May 18, 2010.
4. A reasonable attorney fee in the amount of 25% of the continuing disability compensation and 25% of the payments for past and future attendant care provided by non-professionals is approved for Plaintiff's counsel.
5. Defendant shall pay the costs, which include an expert witness fee of $575.00 to Dr. William Lowe, if not already paid by prior order.
6. This matter is hereby REMANDED to Chief Deputy Commissioner Wanda Blanche Taylor for assignment to a Deputy Commissioner for the gathering of additional evidence, specifically, evidence regarding the amount of attendant care provided to Plaintiff prior to the date of Deputy Commissioner Holmes' Opinion and Award, and the identities of the individuals who provided that care.
This the ___ day of August, 2011.
 S/___________________ LINDA CHEATHAM COMMISSIONER *Page 11 
CONCURRING:
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
 S/___________________ DANNY L. McDONALD COMMISSIONER *Page 1